IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIA MARIE SCHWARTZ,            )
                                 )
        Plaintiff,                )
                                 )
    -vs-                         )   Civil Action No. 17-854
                                 )
NANCY A. BERRYHILL,[1]           )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
        Defendant.                )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Julia Marie Schwartz ("Schwartz") brings this action pursuant to 42 U.SC. § 405(g) for review of the ALJ's decision denying her claim for a period of disability and disability insurance benefits ("DIB").[2] She alleges a disability beginning on April 4, 2013. (R. 20) Following a hearing before an ALJ, during which time both Schwartz and a vocational expert ("VE") testified, the ALJ denied her claim. Schwartz appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [12] and [16].

### Legal Analysis

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.
[2] The ALJ concluded that Schwartz satisfied the insured status requirements of the SSA through December 31, 2019 (R. 22)

1

37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). The

Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

    2. <u>The ALJ's Analysis</u>

At step one, the ALJ found that Schwartz had not engaged in substantial gainful activity since June 6, 2-14. (R. 22)[3] At step two, the ALJ concluded that Schwartz has the following severe impairments: chronic obstructive pulmonary disease ("COPD),

---

[3] The ALJ determined that Schwartz had engaged in substantial gainful activity from April 4, 2013 through June 6, 2014, but that there "has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity, from June 6, 2014, though the date" of the decision. (R. 22)

3

asthma, emphysema, fibromyalgia, polymyositis, myopericaditis, lumbar degenerative disc disease, trochanteric bursitis, nonspecific myopathy, and osteoarthritis. (R. 23-27)[4]

At step three, the ALJ concluded that Schwartz does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ considered fibromyalgia pursuant to SSR 12-2P, Listing 1.04 (degenerative disc disease), 3.02 (chronic pulmonary insufficiency), 4.04 (alleged heart conditions), 14.05 (polymyositis and dermatomyositis), 14.09 (inflammatory arthritis), but determined that Schwartz did not satisfy the criteria. (R. 27-28)

Prior to engaging in step four, the ALJ assessed Schwartz's residual functional capacity ("RFC").[5] The ALJ found Schwartz able to perform sedentary work with certain limitations. (R. 28-32)

At step four, the ALJ determined that Schwartz is capable of performing her past relevant work as an administrative assistant. (R. 32) Specifically, the ALJ concluded that Schwartz "is able to perform it as actually and generally performed." (R. 32) Consequently, the ALJ did not proceed to the fifth step of the sequential analysis.

3. Mental Impairments

Schwartz contends that the ALJ erred in determining at the second step of the analysis that she had no "severe" mental impairments. *See* ECF Docket No. 13, p. 4-9. The two-step inquiry into an impairment's severity is a "de minimis screening device to

---

[4] The ALJ also identified several non-severe physical and mental impairments. (R. 24)
[5] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

4

dispose of groundless claims." *Newell v. Comm'r. of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Newell*, 347 F.3d at 546; *Mays v. Barnhart*, 78 Fed. Appx. 808, 811 (3d Cir. 2003). Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. *Newell*, 347 F.3d at 546-47.[6]

In cases involving mental impairments, the Social Security Administration Regulations set forth a specific technique for determining whether the mental impairment is severe. 20 C.F.R. § 404.1520a. Under this technique, if the ALJ determines that a claimant's symptoms, signs, and laboratory findings support the existence of a medically determinable impairment, he then must assess the claimant's limitations in four functional areas to determine whether that impairment is "severe." *Id,* § 404.1520a(b). The four functional areas include: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.*, § 404.1520a(c). If the ALJ rates the degree of the claimant's limitation in the first three functional areas as "none" or "mild" and as "none" in the fourth area, he generally will

---

[6] Although the Court of Appeals for the Third Circuit has commented that the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it has also made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. *McCrea v. Comm'r. of Soc. Sec*., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *Id*. at 360-61.

5

conclude that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. *Id.*, §404.1520a(d)(1). In his written decision, the ALJ must incorporate his pertinent findings and conclusions based on this technique, including a specific finding as to the degree of limitation in each of the four functional areas. *Id.*, § 404.1520(e). The key question when reviewing the ALJ's Step Two determination is not whether Plaintiff's impairments were in fact severe, but, rather, whether substantial evidence supports the ALJ's finding that those impairments were not severe.

    Here, I agree with the Commissioner that substantial evidence supports the ALJ's finding that Schwartz's mental impairments are not severe.[7] As an initial matter, the ALJ properly analyzed Schwartz's impairment in accordance with the special technique set forth in 20 C.F.R. § 404.1520a. First, the ALJ recognized that Schwartz "does have mental health conditions that are medically determinable impairments…." (R. 24) Specifically, the ALJ acknowledged that Schwartz had been diagnosed with recurrent severe major depression. (R. 24) He then properly analyzed those impairments in accordance with the special techniques outlined above, including making specific findings as to the degree of limitation in each of the four functional areas as a result of Schwartz's mental impairments. (R. 24-27) In this regard, the ALJ concluded that Schwartz had mild limitations in the activities of daily living, no more than mild

---

[7]The second step determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment., *citing, Bradley v. Barnhart*, 175 Fed. Appx. 87, 90 (7th Cir. 2006). "In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe." *McWhinney v. Colvin*, Civ. No. 16-1144, 2017 WL 4167612, * 1 n. 1 (W.D. Pa. Sept. 20, 2017), *citing, Salles v. Comm'r. of Soc. Sec.*, 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007); *Lee v. Astrue*, Civ. No. 6-5167, 2007 WL 1101281, at * 3 (W.D. Pa. March 27, 2006). In any event, here, because Schwartz's claim was not denied at the second step of the analysis, I find there to be no error in any event.

6

limitations in the area of social functioning, mild limitations with respect to concentration, persistence, or pace, and that there was no evidence of any episodes of decompensation of an extended duration. *Id.* Based upon this analysis, the ALJ concluded that Schwartz's mental impairment was not severe. *Id.*

Further, the ALJ properly supported these findings with substantial evidence in the record. (R. 23-27) The ALJ referenced, among other things, records submitted by Dr. Kalik, those submitted by Beverly Speer, MA, LPC, NCC, of Community Counseling Center, and GAF scores. *Id.*, (citing, Exs. 18F, 28F, 4E, 2B, and 27F). He then properly analyzed those impairments in accordance with the special technique outlined above, including making specific findings as to the degree of limitation in each of the four functional areas as a result of Schwartz's mental impairments. *Id.* The ALJ explained that any limitations associated with Schwartz's activities of daily living "appear to be caused primarily from her physical conditions and not her mental health ones." (R. 26) With respect to social functioning, "around the time of her alleged onset date the claimant indicated she did not have any trouble getting along with others and indicated she spoke with her daughter and grandchildren on the phone daily." (R. 26) The ALJ found only "mild" restrictions as to concentration, persistence or pace because Schwartz's mental status examination following a report of memory and concentration problems did not indicate any "loose associations or flights of ideas, her speech was normal and logical, her memory was intact, and she was well oriented to her surroundings." (R. 26) The ALJ also noted that Schwartz discontinued treatment at Community Counseling. Further, the ALJ explained that the records from Speer and Community Counseling Center did not qualify as acceptable medical sources. (R. 24)

7

Schwartz also contends that the ALJ's reliance upon these records is insufficient and that he should have ordered a psychological consultative examination to evaluate her mental impairments. I disagree. Certainly an ALJ has "a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of the impairment and its possible effects on the claimant's ability to work." *Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999). An ALJ may discharge this duty by soliciting testimony from the claimant as well as by seeking the opinion of a medical expert. *Pryborowski v. Colvin*, Civ. No. 13-1038, 2014 WL 3420351, at * 8 (W.D. Pa. July 14, 2014). However, "a decision regarding whether to order a consultative examination rests in the sound discretion of the ALJ." *Pryborowski*, 2014 WL 3420351, at * 8, *citing, Hockensmith v. Astrue*, 906 F. Supp.2d 319, 332 (D. Del. 2012) (citations omitted). Indeed:

> "the ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Thompson v. Halter*, 45 F. Appx. 146, 149 (3d Cir. 2002) (*citing* 20 C.F.R. §§ 404.1517, 416.917, *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1997)). "Other circumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a conflict, inconsistency or ambiguity in the record." *Basil v. Colvin*, CIV.A. 12-315E, 2014 WL 896629, at * 2 (W.D. Pa. Mar. 6, 2014) (*citing* 20 C.F.R. §§ 404.1519(a), 416.919(a)). Although the ALJ has a duty to develop the record, the burden ultimately rests with the plaintiff to present evidence of his or her disability. 42 U.S.C. § 423(d)(5)(A). *See, e.g., Jones v. Comm'r. of Soc. Sec.*, CIV.A. 10-06083, 2012 WL 1339443, at *9 (D.N.J. Apr. 17, 2012) ("The Plaintiff did not meet her burden to show that her depression was severe or significantly interfered with her work, and cannot now argue that the ALJ should have *sua sponte* demanded further evidence on this point."); … A claimant seeking an award of benefits must present evidence demonstrating his or her inability to perform work-related tasks. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S. Ct. 2287, 96 L.Ed.2d 119 (1987) (explaining that the claimant "is in a better position to provide information about his [or her] own medical condition"). When the claimant's inability to engage in a certain work-related activity has not been established, the Commissioner may assume that the claimant is able to engage

8

> in that activity without seeking confirmation from a medical expert. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 362 (3d Cir. 2011) (remarking that an administrative law judge may assess a claimant's residual functional capacity without requesting "outside medical expert review of each fact incorporated into the decision").

*Pryborowski*, 2014 WL 3420351, at * 8-9. Based upon the existing medical records in this case, I find that the ALJ was not required to order a consultative examination. The record was sufficient such that the ALJ could make a proper determination. Thus, I find no error in this regard.

    4. Evaluation of Medical Opinions

Schwartz also challenges the ALJ's evaluation of the medical opinions. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.*, § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must she give that opinion controlling weight. *Id.* Unless a treating physician's opinion is given controlling

weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. *Id.* § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Social Sec. Admin.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 404.1527(d)(1), (3); *Dixon v. Comm'r. of Social Security*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, she "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Security*, 539 F.3d 198, 203-04 (3d Cir. 2008).

Here, Schwartz takes particular issue with the ALJ's decision to discount the opinions of Dr. Kalik and Mr. Marrapese. Marrapese, a physical therapist, completed a functional capacity evaluation. (R. 1016-1028) The ALJ gave "little weight" to Marrapese's evaluation because he is not an acceptable medical source under the Social Security regulations, because he appeared to have examined Schwartz on only one occasion and had no treating medical relationship with her, and because "invalid findings cast doubt as to the accuracy of the test results in the evaluation as a whole." (R. 31) [8] The ALJ is correct that Marrapese did not qualify as a "treating source." As a physical therapist, Marrapese is not an acceptable medical source. See 20 C.F.R. § 404.1513(a); 20 C.F.R. § 404.1527(a)(2) (stating that "Medical opinions are statements from physicians or psychologists or other acceptable medical sources…").[9] Additionally, as a one-time examiner, his opinion cannot be entitled to controlling weight. *See* 20 C.F.R. § 404.1502 (stating that "[t]he term [nontreating source] includes an acceptable

---

[8] The evaluation noted "that the claimant did not give her best efforts as invalid results were reported for a number of categories relating to her lifting and gripping ability." (R. 31)
[9] Schwartz acknowledges that Marrapese is a "non-acceptable medical source." *See* ECF Docket No. 13, p. 19.

11

medical source who is a consultative examiner for us, when the consultative examiner is not your treating source."). See ECF Docket No. 17, p. 13, citing, SSR 96-2p, 1996 WL 374188, at * 2 ("[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'"). Finally, I agree with the Commissioner that the ALJ's decision to afford Marrapese's opinion "little weight" because of invalid findings is supported by substantial evidence of record. Schwartz's medical records reveal that her upper extremities were not worsening and that, in fact, she had good handgrip. (R. 1006). As such, I find no error with respect to the ALJ's evaluation of Marrapese's opinion.

Turning to the ALJ's treatment of Dr. Kalik, as stated above, the ALJ gave his opinion "little weight," finding it to be "inconsistent with the medical records in evidence." (R. 31) Specifically, the ALJ noted that treatment notes from July 6, 2015 indicated that Schwartz suffered from back and neck pain, her spine was stable and only her lumbar spine had limited extension. (R. 31, citing Exhibit 27F, p. 68). Further, the ALJ noted that the medical records lacked any reference to limitations in Schwartz's upper extremities or arms until the day Kalik completed the second medical source statement. (R. 31, citing Ex. 27F, p. 46). In fact, the ALJ noted, "prior to Dr. Kalik's opinion on that date, the claimant was noted to have a good handgrip and only mild myopathy." (R. 31) The ALJ added that, while Kalik limited Schwartz to lifting less than three pounds and standing or walking for less than five minutes at one time, there was no mention of any limitations in treating notes until Kalik completed his second medical source statement. (R. 31) Moreover, Schwartz presented to Kalik only a few weeks later and no limitations were mentioned in the treatment records. (R. 31, citing Ex. 27F, p. 4). A physical

examination revealed normal findings despite Schwartz's complains of pain and limited movement in her joints. (R. 31) I find that these are good reasons and are well supported. As such, I reject Schwartz's contentions that remand is required.

5. Past Relevant Work

At Step Four, the ALJ must determine whether the claimant is capable of performing past relevant work. As part of this assessment, the ALJ must decide whether a person with the claimant's limitations "can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2), § 416.920(a)(4)(iv); SSR 82-61 & 82-62. Here, the vocational expert testified that Schwartz's past work as an administrative assistant was classified as a "skilled occupation generally performed in the national economy at a sedentary exertional level but which the claimant actually performed at a light exertional level approximately six times a year based on the claimant's testimony." (R. 32) Ultimately, the ALJ concluded that Schwartz could perform her past relevant work as an administrative assistant as actually and generally performed. (R. 32) He explained that:

> The vocational expert testified that an individual with the claimant's age, education, and residual functional capacity could perform the claimant's past relevant work of administrative assistant as it is generally performed in the national economy. Additionally, he testified such an individual could perform her past relevant work as an administrative assistant as actually performed by claimant all but approximately six times a year when she needed to perform production work for a couple hours once every two months at a light exertion level. Crediting the vocational expert's testimony, I so find.

(R. 32)

Schwartz insists that the ALJ erred because her job as an administrative assistant was a "composite job." Schwartz's contention that her job is a "composite job" is predicated upon her allegation that she had to work as a production worker once every other month. She testified that she only spent "a couple of hours" once every two months doing production work. (R. 69-70) I find her argument to be without merit.

A composite job is one which has **significant elements** of two or more occupations and no counterpart in the DOT. *Levyash v. Colvin*, Civ. No.16-2189, 2018 WL 1559769, at * 11 (D. N.J. March 30, 2018) (emphasis added). *See also, Garcia v. Colvin*, Civ. No. 12-4191, 2013 WL 3321509, at * 11 n.5 (N.D. Ill. June 28, 2013) (observing that, "if the ALJ can accurately describe the main duties of past relevant work only by considering multiple DOT occupations, the claimant may have performed a composite job.") and Social Security Regulation 82-61, 1982 WL 31387, at *2. *See* POMS DI 25005.020(b) ("A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'")[10] *See also, Burgess v. Social Security Administration*, Civ. No. 15-701, 2016 WL 5800467, at * 4 (M.D. Tenn. Sept. 30, 2016) (explaining that "an adjudicator can deny a claim at step 4 where the claimant remains capable of performing a composite job 'as actually performed,' but an ALJ is not permitted to make an adverse step 4 finding that the claimant remains capable of performing a job 'as generally performed.'") (citations omitted). Rather, the ALJ would have to assess whether the claimant could perform the work as she actually performed it. Additionally, "to establish

---

[10] Admittedly, the "POMS" (Program Operations Manual System) provisions are not judicially enforceable and a claimed violation thereof does not require remand as a matter of law. *See Blum v. Berryhill*, Civ. No. 16-2281, 2017 WL 2463170, at * 11 (M.D. Pa. June 7, 2017) (citations omitted).

14

that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the claimant can perform each job within a composite job, whether as actually performed or as generally performed in the national economy.'" *Levyash*, 2018 WL 1559769, at * 11, *quoting, Boggs v. Colvin*, No. 13-0111, 2014 WL 1277882, at *10 (M.D. Pa. Mar. 27, 2014). An ALJ may not "divide a composite job into two jobs and find the claimant capable of performing past relevant work based on the less demanding of the two jobs." *Id.*

The burden is on Schwartz at the fourth step of the sequential analysis to prove that she cannot return to her past relevant work. *See Adorono v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). She has not discharged this burden with respect to demonstrating that her past work as an administrative assistant constituted a "composite job." The vocational expert did not identify her job as a "composite job." Rather, he identified her past job as that of an administrative assistant. (R. 70-71) He described the job as sedentary in exertional demand with the exception of "all but a couple of hours only six times a year." (R. 71) The "couple of hours" every two months does not constitute a "significant aspect" of her work. See SSR 82-61, 1982 WL 31387, at * 2 (stating that "'[c]omposite jobs' are jobs that involves 'significant elements of two or more occupations.'") There is no evidence in the record that working for a total of approximately 12 hours a year on production constitutes a "significant element" of her job. "The POMS provides that 'the claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant.'" *Lagois by and through Gross v. Berryhill*, Civ. No.17-310, 2017 WL 5713958, at * 6 (W.D. Wash. Oct. 31, 2017) (citations omitted). There is no record evidence that

15

the duties she performed while working in production were the "main duties" of her job. See Blum v. Berryhill, Civ. No. 16-2281, 2017 WL 2463170, at * 11 (M.D. Pa. June 7, 2017) and York v. Berryhill, Civ. No. 17-835, 2018 WL 1884823, at * 6-7 (W.D. Ok. Apr. 19, 2018) Simply stated, Schwartz has not satisfied her burden of showing that her position as an administrative assistant involved "significant elements" of any other job, and, therefore, she did not demonstrate that the ALJ erred in finding that Schwartz could do her past relevant work as a manager as generally performed.

6. Credibility

Finally, Schwartz contends that the ALJ's credibility assessment is generally defective. It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ must consider "the entire case record" in determining the credibility of an individual's statement. SSR 96-7P. Thus, the ALJ will consider evidence from treating, examining, and consulting physicians, observations from agency employees, and other factors such as type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 416.929(c); SSR 96-7P. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. Id. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7P. Ordinarily, an ALJ's credibility determination is entitled to great deference. See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014).

Here, the only objection that Schwartz raises to the ALJ's consideration of credibility is that of her work history. Schwartz represents that, "[f]rom 1986 through 2014, before Plaintiff became disabled, she earned 98 out of 116 consecutive quarters of coverage." *See* ECF Docket No. 13, p. 24. Certainly, "when the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility." *Schreibeis v. Comm'r. of Soc. Sec.*, Civ. No. 10-1025, 2012 WL 11101, at *1 n. 1 (W.D. Pa. Jan. 3, 2012). *See also, Patton v. Astrue*, Civ. No. 8-205J, 2009 WL 2876715, at *3 (W.D. Pa. Sept. 8, 2012) (stating, "[i]t is true that the testimony of a claimant with a long, productive work history will be given substantial credibility concerning her work-related limitations, assuming those limitations are also supported by competent medical evidence.") However, work history alone is not dispositive of credibility. *Thompson v. Astrue*, Civ. No. 9-319, 2010 WL 3661530, at * 4 (W.D. Pa. Sept. 20, 2010). A claimant's work history is just "one of many factors the ALJ considers in assessing an individual's subjective complaints… the ALJ is not required to equate a long work history with credibility." *Patton*, 2009 WL 2876715, at * 3. As other judges in this district have noted, the cases in which the Third Circuit concluded that the ALJ should have considered a long work history as affording substantial credibility, e.g., *Dobrowsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979), involved claimants whose subjective symptoms were supported by evidence of record. "The fact alone that a claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony of the extent of her limitations." *Cox v. Colvin*, Civ. No. 15-1768, 2017 WL 2772299, at * 8 (E.D. Pa. Jan. 31, 2017) (citations omitted).

Here, the ALJ was clearly aware of Schwartz's work history. He acknowledged that Schwartz had worked as an administrative assistant from 2005 to 2014. (R. 32) The ALJ also noted that Schwartz's "earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2019." (R. 20) Yet, as set forth elsewhere in this Opinion, the evidence of record does not reasonably establish that Schwartz is precluded from returning to her past work. As such, I find that the ALJ adequately evaluated Schwartz's credibility and that substantial evidence supports the ALJ's conclusion that, "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 29)

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIA MARIE SCHWARTZ, )
    Plaintiff, )
)
 -vs- ) Civil Action No. 17-854
NANCY A. BERRYHILL,[11] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 25th day of July, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED.

    BY THE COURT:

    /s/ Donetta W. Ambrose
    Donetta W. Ambrose
    United States Senior District Judge

---

[11] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.